# EXHIBIT SS

*Mary Barros-Bailey, PhD, CRC, CDMS, CLCP, NCC, D/ABVE*

31 May 2012

Ms. Erika Birch
Ms. Lucy R. Juarez
Attorneys at Law
Strindberg & Scholnick
802 West Bannock St., Ste. 402
Boise, ID 83702

RE:   GOEDEN, Richard

## JOB ACCOMMODATION REVIEW & EARNING CAPACITY EVALUATION
## PRELIMINARY REPORT

The case of Mr. Richard Goeden was referred by her attorney, Ms. Erika Birch, for review of whether his work at the time of employment with Darigold could be reasonably accommodated and his earning capacity given his current need to seek work in the competitive labor market based on his dismissal from his position at Darigold. The records reviewed in this analysis include:

- 5/28/87 – 8/11/08, Idaho Industrial Commission
- 9/8/92, Goeden Performance Evaluation
- 9/11/92 – 2/8/10, Darigold Personnel and Workers' Compensation File
- 2/8/96 – 4/5/00, Boise Speech & Hearing Clinic
- 2/9/96, Darigold Memorandum
- 2/21/97 – 7/6/11, Basic Audiometric Report
- 11/16/98 – 12/18/98, Idaho Human Rights Commission Charge of Discrimination and Response
- 8/19/99 – 10/25/99, REHABworks
- 9/7/99 – 9/8/99, Idaho Elks Rehabilitation Hospital
- 7/9/03 – 12/14/11, House of Hearing
- 10/25/03 – 1/27/04, WestFarm Foods
- 12/1/03 – 12/23/03, Blue Cross of Idaho
- 3/14/05 – 12/8/11, Boise Speech and Hearing
- 11/25/05 – 9/7/07, Richard Goeden's Maintenance Mechanic Work Orders
- 5/17/06 – 12/1/11, Darigold's Detailed Injury Report
- 8/6/06 – 5/5/08, St. Benedict's Clinics
- 1/17/07, Return to Work Assessment by Dr. Shapiro
- 5/4/07 – 7/6/09, Liberty Northwest
- 9/7/07 – 1/4/10, Richard Goeden's Preventative Maintenance Mechanic Work Orders
- 5/22/08, Noise Logging Dosimeter

---

Bilingual Rehabilitation Counselor,
Vocational Expert & Life Care Planner

P.O. Box 7511, Boise, Idaho 83707-1511

PH.............208.229.8484
FX.............208.279.6830
barrosm2002@gmail.com

INTERMOUNTAIN
VOCATIONAL SERVICES

RE: GOEDEN, Richard
31 May 2012
Page 2

- 7/21/08 – 10/14/11, OSHA on the Job Work Injury Log Form
- 3/2/09 – 4/16/12, Hearing Aid Counselors and Audiology
- 3/17/09, Dr. Jensen
- 6/8/09 – 7/11/11, Hearing Reports for Darigold Mechanics or Furloughed Employees
- 9/18/09 – 12/22/09, Hearing Counselors
- 9/22/09, Functional Job Analysis, Plant Maintenance Worker (w/ and w/o hearing requirement)
- 10/15/09, Functional Job Analysis, Preventative Maintenance Worker
- 11/11/09, St. Benedict's Family Medical Center
- 11/11/09, Jerome Family Clinic
- 11/11/09, Jerome Physical Therapy
- 2/4/10 – 9/26/10, Richard Goeden's Job Search Efforts
- 4/15/10, ACE Group
- 7/8/10 – 1/28/11, Idaho Human Rights Commission
- 9/6/10, Social Security Disability Application
- 12/20/10 – 2/7/11, Strindberg & Scholnick Correspondence to the Idaho Human Rights Commission
- 5/27/11, Complaint and Jury Demand
- 11/9/11, Job Analyst Hiring E-mail
- 11/28/11, Darigold's Responses to Plaintiff's First Requests for Admission
- 11/30/11, Plaintiff's Response to Defendant's First Set of Interrogatories to Plaintiff
- 11/30/11, Plaintiff's First Set of Discovery to Defendant and Defendant's Answers to Responses Thereto
- 4/18/12, Deposition of Mr. Clay Powell
- 4/19/12, Deposition of Mr. Richard Goeden

Besides reviewing a variety of records, I had the opportunity of interviewing Mr. Goeden on 5/2/12. Present during the meeting were his wife Gail and attorney, Ms. Lucy Juarez, who contributed appropriately to the process.

In order to complete my analysis in this matter, I have requested the opportunity to perform a job analysis of the plant. It is my understanding this is being arranged for July 2012. Therefore, this constitutes my preliminary opinions in this case to be supplemented once the site visit is completed.

## *Methodologies*

The methodology employed was the use of a functional job analysis form and comparison to EEOC guidelines for reasonable accommodation. The following definitions are used to articulate the difference between a position, job, and occupation:

- **Position**: This is "a set of duties, tasks, activities, and elements able to be performed by a single worker ... [E]ach employed person has a position rather than a job"

RE: GOEDEN, Richard
31 May 2012
Page 3

> (Brannick, Levine, & Morgenson, 2007, p. 7). An example of a position is a job developer employed with X employer at X location performing X work activities. When scanning the classified employment listings or online job boards, employment being offered is typically for positions.
>
> - **Job**: "group of positions within an establishment which are identical with respect to their major or significant tasks and sufficiently alike to justify their being covered by a single analysis. There may be one or many persons employed in the same job." *Revised Handbook for Analyzing Jobs* (US Department of Labor, 1991) (p. 2-1).
>
> - **Occupation**: Work activity that is "a group of similar jobs found in various establishments" (Wright, 1980). It is defined in the *Revised Handbook for Analyzing Jobs* (US Department of Labor, 1991) as "… is a group of jobs, found at more than one establishment, in which a *common* set of tasks are performed or are related in terms of similar objectives, methodologies, materials, products, worker actions, or worker characteristics." (p. 2-1).

The methodology employed in this evaluation was developed by Dr. Rick Robinson regarding core variables to consider in 20 general domains, including: socioeconomic; cultural; educational; past work; job acquisition; military; language; medical history, treatment, and function; behavioral health; household activities; activities of daily living; avocational; financial; psychometrics; transferable skills; labor market information; worklife participation; rehabilitation planning and services; professional resources; and, legal jurisdiction.

### Social History

Mr. Goeden was born on 9/1/47. He is married to Gail and they live in Wendell, Idaho.

### Medical History, Status, and Functional Limitations

Mr. Goeden indicates that his hearing loss was initially detected when he entered the military, but it was sufficient to pass the threshold of his service. Over time, his hearing decreased. Although he has worn hearing aids since about 1980, he was unable to wear them at work until he was employed with the Darigold plant in Caldwell and has worn them consistently on the job since that time.

Records suggest that Mr. Goeden had a past medical history significant for arthritis, shoulder surgeries, and underwent a right shoulder SLAP lesion. Dr. Jensen provided a permanent impairment rating for Richard's right shoulder of 7% of the whole person and found him at maximum medical improvement on 3/17/09. In his report, the physician states that Richard had returned to his job and interprets this as modified work into a different position that was less physical. Eventually, Mr. Goeden underwent a functional capacity evaluation that indicated the following "Richard has been tested to determine ability to work within the demands of 'heavy impact' work load. The patient's maximal safe lifting limit of 100 pounds."

RE: GOEDEN, Richard
31 May 2012
Page 4

Later in 2009, Richard was required by Darigold to undergo a physical examination that cleared him orthopedically. A physical review by Mr. Williams Jacobs, PA-C at the Jerome Family Clinic concluded that Mr. Goeden needed an improved quality hearing prosthesis to fulfill the requirements of the job. Specifically, Mr. Jacobs, PA-C states that "*Mr. Goeden appears to have a significant hearing deficit in both hears which is not quite corrected with the hearing prostheses that he wears in each ear. He did tell me that his hearing has significantly improved with these new prostheses. However, his hearing is suboptimal. With regard to the essential functions of his position, I question whether Mr. Goeden can listen to machines and other devices while they are in operation order to locate possible causes of trouble. I also feel after evaluation on that he may not be able to effectively communicate with supervisors and coworkers via a radio. Mr. Goeden admits that he can hear a noise from a radio that is used for communication, however he has difficulty in recognizing many of the words ... In my opinion, Mr. Goeden cannot currently perform the essential functions of this position; however could be qualified with an improved quality of hearing prosthesis. Perhaps an audiologist could help Mr. Goeden with this.*"

Richard was next required by his employer to by evaluated by an audiologist, Mr. Schroeder, who opined that Richard had "*sensinueral severe to profound hearing loss in both ears worse in the high tones. SRT's are in good agreement with PTA's and having no speech discrimination. Richard has hearing, but no ability to understand speech and language unless the individual is facing him. His ability to effectively communicate with co-workers and supervisors is extremely handicapped due to the lack of any speech discrimination scores. There are certainly tasks he can perform, however communicating over the radio or telephone appears to be impossible. It is our opinion that he cannot perform the requirements listed in his job description.*"

### **Educational Background**

Richard is a high school graduate from Crofton, Nebraska in 1965. He possesses additional post-high school training specific to about six months as a farm mechanic (Western Iowa Tech, Sioux City, Iowa), six months in welding (Boise State University), and in-service training in maintenance and electricity. He states having certifications in welding.

### **Vocational and Avocational Histories**

Before joining the military, Richard worked for three to four months as a concrete construction laborer for a new hospital being built and then installing windows for eight or nine months. He served in the US Army from 1966 to 1968 where he operated an offset printer and was a paratrooper. His first job back in the civilian labor market was for the company where he installed windows for about a month before he started employment with Iowa Beef Processing in 1968.

At Iowa Beef, he worked in the laundry washing shrouds for about eight months before he worked in the edible tallow operation for three to four years and eventually became a

RE: GOEDEN, Richard
31 May 2012
Page 5

maintenance mechanic (MM). By 1977, he transferred to the Iowa Beef plant in Boise and continued in the new location as a MM.

Richard continued to work as a MM until he became employed with Darigold in the same occupational classification in 1992. Eventually, the operations at the Caldwell plant changed and there was a reduction in force while the new Jerome plant started operations. Richard wanted to get out of the Canyon County area and transferred in his same MM job to the modern plant in the Magic Valley in 2004.

Review of Richard's performance evaluations at Darigold suggests that he mostly received average to above average scores. None of the performance and work order records reviewed suggested that his performance as a MM or PM were substandard to other MMs at Darigold.

A letter from Darigold to Mr. Goeden on 12/3/09 indicates that the Jerome Darigold plant was undergoing a reduction in force and Richard's position as a PM was being eliminated. In his deposition, Mr. Clay Powell stated that Darigold was initially going to give Richard the option of returning to the MM position without medical testing in 7/09. However, five months later, a 12/09 letter indicates that Richard had the option of returning to his previous position as a MM only upon completing medical certification of the ability to perform the essential duties of the position. This is a job in which he had worked for 15 years with Darigold, including about three of those years with the new Jerome plant where he was employed and very similar in work activity to the MM position he had worked for over a decade with Iowa Beef. The company eventually determined that from an orthopedic standpoint concerning his knees and shoulders, Richard could perform the essential duties of the position. However, from a hearing standpoint, Darigold concluded that Mr. Goeden could not perform the essential duties of the job; therefore, they dismissed him from his opportunity to bump into the MM position and terminated him on 1/4/10 after he underwent an audiology evaluation as recommended by Mr. Jacobs, PA-C.

## Summary of Job Analyses

Deferred until plant inspection and job analysis.

## Transferable and Cross-Functional Skills

Skills are transferable when skilled or semiskilled work activities done in past work can be used to meet the requirements of either skilled or semiskilled work activities. Skills are only transferable if the individual has not been precluded from activities allowing him/her to utilize these and other work activities of the same or lesser degree of skill, the same or similar tools or machines are used, and the same or similar raw materials, products, processes, or services are involved. The O*NET defines "cross-functional skills," as those that can be used across different classes of jobs.

Mr. Goeden has a variety of skills, including:

RE: GOEDEN, Richard
31 May 2012
Page 6

- Adjust And Repair Mechanical Controls
- Align Gears
- Apply Basic Plumbing
- Apply Electronic Principles
- Apply Knowledge Of Ventilation Systems
- Apply Plumbing Systems Knowledge
- Calibrate Or Balance Equipment And Machinery
- Estimate Cost, Time, And Materials Needed For Repairs
- Fabricate Parts And Items Using Sheet Metal
- Fit Bearings
- Follow Safety Procedures
- Install Electrical And Electronic Cable And Wiring
- Interpret And Apply Service And Repair Manuals
- Lay Out Large Repair And Maintenance Projects
- Maintain Tools And Equipment Used In Industrial Repair
- Maneuver Heavy Objects
- Operate And Monitor HVAC Equipment
- Operate Hand And Power Woodworking Tools Such As Sanders, Routers, And Miters
- Operate Soldering Equipment
- Perform Combination Welding
- Perform Routine Building Maintenance
- Perform Safety Inspections In Manufacturing Or Repair Setting
- Process Records And Maintain Forms And Files
- Read Repair Work Orders
- Schedule Maintenance For Industrial Machines And Equipment
- Test Mechanical Products And Equipment After Repair Or Assembly
- Use Acetylene Torch
- Use Algebra
- Use Basic Carpentry Techniques
- Use Basic Mathematics
- Use Control And Regulating Devices To Adjust And Maintain Industrial Machinery
- Use Electrical Test Equipment
- Use Electronic Test Equipment
- Use Geometry
- Use Measuring Devices In Repairing Industrial And Heavy Equipment
- Use Metric System
- Use Pipe Fitting Equipment
- Use Precision Measuring Devices In Mechanical Repair Work
- Use Pressure Gauges
- Use Voltmeter And Ohmmeter
- Weld Metal Parts
- Work With High Voltage Apparatus

RE: GOEDEN, Richard
31 May 2012
Page 7

## Labor Force Participation

Selection of worklife expectancy tables deferred to economist. However, there is nothing to suggest that he had a reduced worklife before the incident that is the subject of the litigation resulting in the need for this evaluation; despite the onset of reduced hearing level as early as when he was in the military, throughout his worklife with acquired orthopedic conditions, Richard's pre-incident worklife is suggestive of a normal worklife for a man with his level of education (some college, no degree into which his vocational training is classified).

Post incident, Richard's worklife expectancy is substantially reduced. The human capital he had acquired over many years at Darigold does not equally transfer into the competitive labor market now given his age and the hearing difficulties he acquired, despite the fact that these could be accommodated. This visible disability causes barriers to employment resulting in employers judging the value of his knowledge by the limitations of his hearing. Consequently, his worklife post Darigold is significantly impacted. Further discussion of this factor and the likely ability to return to work is further discussed below.

## Discussion and Opinions

Mr. Richard Goeden is a 64-year-old married maintenance mechanic with high school education, some additional training but no degree, and over 30 years of experience as a plant maintenance mechanic. Records indicate that Mr. Goeden began his employment with Darigold in 1992 in the Caldwell, Idaho plant. While still employed in that plant as a MM, he was provided with a text pager in 12/99 to assist him in communication in his usual and customary duties. Early follow up on the use of the accommodation by the rehabilitation counselor with RehabWORKS suggests that the accommodation worked for him in 1/00.

He continued in the MM position at the Caldwell Darigold plant until there was a reduction in force and the new Jerome plant was hiring in 2004. At that time, he opted to continue in the MM job with the new plant. He continued in this MM job for over two years until he had a shoulder injury in 2007. A modified-turned-permanent position as a preventative maintenance mechanic (PM) was developed due the increase in production as he was returning to work from his right shoulder injury. At the time of reduction in force at the Jerome plant in 2009, the PM position was being eliminated and Mr. Goeden was required to undergo a fitness for duty physical and then an auditory evaluation to determine his ability to perform the essential duties of the position of MM, a position he had performed for many years at the older Caldwell plant and for about three years at the new Jerome plant before assuming the PM position for two years.

Richard passed the physical evaluation for his ability to perform the exertional demands of the work activities associated with the plant MM position based on a functional job analysis that was developed after he was informed of his need to undergo the fitness for duty. It was after he passed the physical criteria associated with the essential demands of the job on 11/11/09 that the focus then became his ability to perform the auditory demands of the job. The auditory

RE: GOEDEN, Richard
31 May 2012
Page 8

fitness for duty evaluation on 12/4/09 concluded that he was unable to perform the essential duties of his position.

Review of the job analysis and the auditory fitness for duty based on standards in the profession for making the person-job match (Barros-Bailey, 2012; Tufts, Vasil, & Briggs, 2009) suggest that:

> 1) *Job Analysis*: there are two job analyses in the records -- one includes the hearing demands of the job and the other does not. The reason for each is unclear. On the job analysis, hearing-critical tasks are not articulated vis-à-vis confounding auditory stimuli experienced by all employees. That is, as described in the 7/9/08 Industrial Hygiene Noise Survey, because of the nature of the plant, all job classifications are exposed to noise, with the MM having the second lowest level of exposure of all job classifications. The requirements for essential duties of the job associated with hearing specific to the MM vis-à-vis those common environmental sounds or the other jobs is not distinguished. That is, there is not a distinction as to the hearing demands of other jobs and the effects on communication and safety difficulties for employees in higher noise exposure environments where the noise level may be highly problematic to these work activities.

> 2) *Auditory Fitness for Duty*: Early review of records and Mr. and Ms. Goeden's reports indicate that no standard auditory fitness for duty protocol seemed to be in place. Mr. Goeden wore hearing aids regularly on and off the job. The Goedens report that Richard was not tested with his new hearing aids in the auditory fitness for duty evaluation, although literature indicates that this would be the protocol. Therefore, an apples-to-apples person/task match could not adequately be performed to arrive at valid conclusions given the effects of the auditory prosthetic on Mr. Goeden's ability to perform essential functions.

A 2008 Industrial Hygiene Noise Survey of the Darigold Jerome plant provides a scan of the hearing levels in the various work settings. One MM was included in this analysis. The survey reports that the "typical noise exposure is expected to be non-routine, based on inspection requirements and equipment performance during a given shift. All areas of the plant may be visited for as long as a work task requires. The time-history graph illustrates the non-repetitive nature of the work with some sustained exposures as well as rapid changes ... The maintenance mechanic estimated 7-9 hours of this shift was spent in the shop and office area." This estimate is consistent with Richard's who reported the majority of his time was not in the louder production areas of the plant. Indeed, in the six jobs studied in the Noise Survey, the MM job has the second lowest maximum slow dB(A) and 12-hour projected dose following receiving – lower than the supervisory, SAPAC, separator, and dryer/evaporator positions. Given the level of noise hygiene in the Darigold Jerome plant, it is unclear how anyone with either corrected or normal hearing could meet the requirements listed in a job description in the plant that involves the need for communication or using hearing as one of the senses in a multi-faceted diagnostic task. In fact, from Darigold's records, it appears that Richard's hearing had not changed from the time he performed the MM position in 2006 until he was

RE: GOEDEN, Richard
31 May 2012
Page 9

tested again while in the PM position and consideration was given to him bumping back into the MM position in 2009 indicating that if he was able to perform the essential duties of the MM job without safety or performance concerns before he became a PM given the level of exposure in the same work setting, if his hearing did not change, there is no reason to conclude he could likewise not perform those same essential duties in the same work environment.

Mr. Goeden not only performed the essential functions of the PM position that was eliminated in the reduction of function for about two years, but he also performed the essential functions of the MM position for a longer time in the Jerome plant where he was employed since 2005, and previously at an older Darigold plant for a dozen years, as well as with meat processing plants in Idaho and Iowa. The MM position is one he knew well given over 30 years of experience, despite different plant settings and emerging technological changes. Although he was in the PM position for two years, in that position, he continued to perform MM duties just for a reduced period during his workday or workweek. Therefore, although his job title was different, Mr. Goeden essentially performed the MM essential duties throughout his tenure in the PM position. That is, as a PM, he performed routine preventative maintenance about 2/3 to 3/4 of his time but still performed MM duties the remainder of his time. The activity was switched when he did the MM position where he performed the MM duties 2/3 to 3/4 of the time, but still did PM duties the remaining time. While holding either position, he never did the duties associated with each job title exclusively.

With respect to accommodation, over his career with Darigold, options were examined to bridge potential deficits in his communication. In the Caldwell plant that was anecdotally indicated to be louder than the Jerome plant, an accommodation was made available to him of a vibrating pager – a simple solution using easily-accessed technology that now is considered mainstream compared to its use in the late 1990s. It is unclear as to what came of that pager and why it was not used or integrated in the Jerome plant. Certainly, this would be an easy and viable solution. Once the audiologist's conclusions were received by Darigold on 12/4/09, there is no evidence that the employer engaged in a process to discuss accommodations with Mr. Goeden in the intervening month until he was terminated from his position on 1/4/10.

The potential use of accommodation such as a vibrating pager seems to be in dispute: Darigold indicates that this was offered to Mr. Goeden in a discussion with Mr. Powell about a Nokia loopset device and Richard indicates that this was never offered. RehabWORKS records from 1999 and 2000 suggest that this might be a potential consideration for reasonable accommodation given that early reports of the outcome of use of such a pager appeared positive. It is not clear what came of that accommodation between the Caldwell and Jerome plants. What were once considered devices more distinct for accommodation are now standard speech-to-text technologies. For instance, Google allows for the ability of a voice message to automatically be converted into text and appear as a message on a smartphone, and a smartphone can easily be programmed to vibrate to alert the user to incoming messages whether these are verbal or textual. More specific recommendations as to various alternatives for Mr. Goeden may be discussed in the supplemental report once a plant inspection and job analysis is completed.

RE: GOEDEN, Richard
31 May 2012
Page 10

Although there is some discussion by Mr. Powell as to the potential safety concerns of Richard's hearing, the plaintiff was employed over many years in production environments with Darigold and Iowa Beef without paperwork to support that he was, indeed, a danger to himself or others. Mr. Powell testified that it was the physical demands of the MM that he believed would preclude Richard from performing the essential functions of the position, not-hearing. In fact, Richard's performance evaluations did not bear out production or safety outcomes documented against his inability to perform these essential functions due to his hearing.

Richard's job search has continued since he was dismissed from Darigold. He checks the newspaper about three times per week as well as online job boards. He was in the process of applying for a job with Community Cheese at the time of our meeting. The kind of work he had been applying for includes fence installation, maintenance mechanic, janitorial, and other positions. He underwent interviews with a fencing company, Amalgamated Sugar, Glambia Foods, Jerome Cheese, and a plastics manufacturer but has not received a job offer. The literature suggests that Richard's experience for employment and re-employment is not strong. He possesses some strong skills, as suggested in this evaluation, which would suggest that he would have a large pool of jobs available to him and as demonstrated in his ability to pass the paper scan into interviews but not being offered employment.

Beyond the employability and placeability effect of his hearing within the competitive labor market, he is searching for work at a time of an economic downturn. A recent report from the Government Accounting Office (see http://www.gao.gov/assets/600/ 590408.pdf) indicates that older workers after the age of 55 are experiencing a longer time of unemployment as the economic conditions of the United States progress, particularly in the most recent figures for 2010 and 2011. The greatest percentage of these workers had over a year of unemployment before finding work. Those without a high school education experienced the greatest level of unemployment. Although Richard will likely eventually find employment, he will experience further unemployment until he is eventually placed.

He has not been in the competitive labor market for over 30 years and has basic job search skills and needs assistance with those skills to include the full array of resources outlined by the Bureau of Labor Statistics[1] as consistent with a full job search effort including:

- **Personal contacts**: This traditionally, and currently, is the main way that people find employment.
- **School Career Planning and Placement Offices**: These are unavailable to him given that he has not attended academic training where he could access these services.
- **Employers**: Richard has a list of employers where he has applied for employment and should continue in his efforts in this regarding.
- **Classified Ads**: Richard uses this as a method for job search.

---

[1] See 2010-2011 Occupational Outlook Handbook, a well-known publication from the US Department of Labor, Bureau of Labor Statistics, http://www.bls.gov/oco/oco20042.htm

RE: GOEDEN, Richard
31 May 2012
Page 11

- ➢ **Internet Resources**: Although a source of jobs, these sources have only been found to be about 10% effective in recent literature.
- ➢ **Professional Associations**: He belongs to no professional associations he could access for his job search efforts.
- ➢ **State Employment Service Offices**: Richard should continue his job search with the Idaho Job Service.
- ➢ **Federal Government**: All Federal jobs are listed in USAjobs.gov and it should be visited regularly for listings.
- ➢ **Community Agencies**: Older worker programs and other related services should be investigated.
- ➢ **Private Employment Agencies and Career Consultants**: Registering with local employment agencies will provide access to employers who do not otherwise list jobs in other employment sources.

Despite an enhanced job search process, once Richard finds work, he will likely earn substantially lower than his wages at Darigold. Should he find a job as a welder, the 2011 Idaho Occupational Employment and Wage Survey for the Twin Falls area suggests that he will earn between $12.30 and $15.72 per hour (50th to 75th quartile). For maintenance positions, these wages are between $15.97 and $20.62 per hour.

In summary, I believe it appears that protocols from job analysis, to auditory fitness for duty, to the interactive process were not followed in evaluating Mr. Goeden's ability to perform the essential functions of a position that he had performed for many years; accommodations were not adequately explored to determine Richard's ability to perform the MM job; and, Richard's greatest earning capacity is in his position at Darigold and will be substantially reduced in the competitive labor market due to wage and worklife issues.

Thank you for giving me the opportunity to provide this earning capacity evaluation and job evaluation. I look forward to the opportunity of evaluating his past relevant work on site. Opinions expressed in this report are based on all the information and research conducted by the time of its writing. Should further data become available, I would be happy to supplement this report if my opinions change. If you have any questions, please feel free to contact me.

Sincerely,

*Mary Barros-Bailey*

Mary Barros-Bailey, PhD, CRC, CDMS, CLCP, NCC, D/ABVE
Bilingual Rehabilitation Counselor

*American Board of Vocational Experts-Diplomate*
*Certified Disability Management Specialist*
*Certified Life Care Planner*
*Certified Rehabilitation Counselor*
*Forensic Vocational Expert-Registered*
*National Counselor Certificate*