IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD GOEDEN,<br><br>Plaintiff,<br><br>v.<br><br>DARIGOLD, INC., a Washington corporation<br><br>Defendant. | Case No.  1:11-CV-252-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by defendant Darigold and a motion for partial summary judgment filed by plaintiff Richard Goeden.  The Court heard oral argument on both motions on November 14, 2012, and took the motions under advisement.  For the reasons expressed below, the Court will deny Darigold's motion and grant in part Goeden's motion.

## FACTS

Goeden was fired by Darigold after working there for about 18 years.  In this lawsuit he claims he was fired because of his disability and age.  Goeden was 62 at that time, and had been hearing impaired since 1980.

Goeden was originally hired by Darigold in 1992 to work in their Caldwell plant as a Maintenance Mechanic.  He held that position for 12 years, and then transferred to Darigold's newer milk processing plant in Jerome in October 2004.

**Memorandum Decision & Order - 1**

He worked there as a Maintenance Mechanic for over two years until January 2007, when he slipped and fell on some ice at the plant, causing a shoulder injury that required surgery. To accommodate Goeden's injury, Darigold created a new Preventative Maintenance position for him that required less physical exertion.

In 2009, Darigold decided to reduce the workforce at the Jerome plant. In implementing that decision, Plant Manager Clay Powell targeted Goeden's Preventative Mechanic position for elimination. This meant that Goeden, with 17 years of experience, would be laid off while another maintenance worker with just two years of service would be retained. Darigold's corporate officials balked at Powell's plan, and so informed him on September 11, 2009. That same day, Powell told Darigold's Director of Human Resource Operations that Goeden was a safety risk in the plant. The Director responded that Goeden should be evaluated for fitness for duty.

Before requiring Goeden to undergo a fitness-for-duty exam, Darigold offered him a severance package. When he turned it down, Darigold required him to undergo a fitness-for-duty exam before they would allow him to transfer back into his Maintenance Mechanic position.

On November 11, 2009, Goeden was sent for evaluation by a physical therapist and a physician's assistant. Goeden passed the physical part of the exams with regard to his shoulder and recent knee surgery. But physician assistant William Jacobs stated that

> [w]ith regard to the essential functions of his position, I question whether Mr. Goeden can listen to machines and other devices while they are in operation in order to locate possible causes of trouble. I also feel after evaluation that he may not be able to effectively communicate with supervisors and coworkers via a radio. Mr. Goeden admits that he can hear a noise from a radio that is used for communication, however he has difficulty in recognizing many of the words . . . . In my opinion, Mr. Goeden cannot currently perform the essential functions of this position; however, [he] could be qualified with an improved quality of hearing prosthesis. Perhaps an audiologist

**Memorandum Decision & Order - 2**

could help Mr. Goeden with this.

*See Jacobs' Letter (Dkt. No. 53-23).* The results of this evaluation surprised Darigold. For years, Goeden had been performing the essential functions of these positions. His hearing had been tested by Darigold annually and it remained statistically steady since 2004. There is no evidence of any recent deterioration of his hearing that would justify a concern that he was unfit for the position. In an email sent to Powell from Darigold's Human Resources Operations Manager on November 13, 2009, the Manager wrote: "Interesting, [Goeden] was declared not fit for duty – but only because of his hearing impairment!"

Pursuant to Jacobs' recommendation, Darigold required Goeden to undergo an evaluation by an audiologist. On December 2, 2009, Goeden saw Greg Schroeder, a hearing instrument specialist, who conducted various hearing tests. Those tests were evaluated by Schroeder's father, an audiologist. He sent a letter of evaluation to Darigold dated December 22, 2009, stating in pertinent part as follows:

> [Goeden] has hearing, but no ability to understand speech and language unless the individual is facing him. His ability to effectively communicate with co-workers and supervisors is extremely handicapped due to the lack of any speech discrimination scores. There are certainly tasks he can perform, however communicating over the radio or telephone appears to be impossible. It is our opinion that he cannot perform the requirements listed in his job description.

*See Williamson Declaration (Dkt. No. 44) at Exh. 7.* On January 4, 2010, thirteen days after receiving Schroeder's letter, Darigold fired Goeden in a letter that reads in pertinent part as follows:

> The results of Mr. Schroeder's evaluation were unchanged from those of Mr. Jacobs . . . . Mr. Schroeder provided a written evaluation in which he concluded that you were unable to fulfill the requirements of the Maintenance Mechanic position because of your hearing deficit . . . . Because you are unable to fulfill the requirements of the Maintenance Mechanic position, you will not have the option of transferring to that

**Memorandum Decision & Order - 3**

position. This means that . . . your employment with Darigold will be terminated, effective today.

*See Juarez Declaration, Exh. TT (Dkt. 53-32).* Darigold made no attempt to interact with Goeden after receiving notice from Jacobs and Schroeder that Goeden's hearing impairment rendered him unfit for the job. Darigold also made no attempt to follow up with either Jacobs or Schroeder to determine if any reasonable accommodation would allow Goeden to perform the essential functions of his job.

Goeden responded by filing this lawsuit, alleging that he was fired because of his disability and age in violation of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Idaho Human Rights Act (IHRA). He also alleges that his termination constitutes a breach of contract. In his ADA claim, Goeden argues that Darigold (1) failed to engage in the required interactive process in good faith; (2) failed to provide him with a reasonable accommodation; and (3) subjected him to an improper medical exam.

Darigold has filed a motion for summary judgment on all claims. Goeden has filed a cross motion for partial summary judgment on his claims that he was subjected to an improper medical exam and that Darigold failed to engage in the interactive process.

## ANALYSIS

### Judicial Estoppel

Darigold seeks a summary judgment ruling that Goeden is estopped from claiming he can perform the essential functions of his job with accommodations. Darigold argues that Goeden, to obtain disability benefits, represented that he could not perform the essential functions of his job, and is therefore now estopped to claim otherwise.

**Memorandum Decision & Order - 4**

Darigold actually makes two related arguments here that raise two different forms of estoppel. Darigold argues first that Goeden's statements to the Social Security Administration (SSA) trigger estoppel. That argument is based on judicial estoppel. *See Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795, 807 (1999). Darigold also argues that Goeden's statements to a private insurer, Standard Insurance, trigger estoppel. That argument is based on equitable estoppel. *Keller Foundation/Case Foundation v. Tracy*, 696 F.3d 835, 847 (9th Cir. 2012). The Court will consider each, beginning with the argument based on judicial estoppel.

In *Cleveland,* the district court had awarded the employer summary judgment on an ADA claim because the employee had earlier represented to the SSA that she was "totally disabled." The district court held that this representation estopped the employee from arguing that with reasonable accommodations, she could perform the essential functions of her job.

The Supreme Court reversed. *Cleveland*, 526 U.S. at 807. Its decision explained that the SSA does not take into account the possibility of "reasonable accommodation" when it determines that an individual is disabled. *Id.* at 803. Because the employee's SSA application did not state that she was unable to perform even with reasonable accommodations, the Supreme Court reversed the summary judgment in favor of the employer. The Ninth Circuit has similarly reversed a summary judgment in favor of an employer where the employee's SSA determination did not consider whether she could perform the job with reasonable accommodations. *Cox v. Wal-Mart Stores Inc.,* 2011 WL 2632086 (9th Cir. 2011) (unpublished disposition).

That same circumstance exists here. There is no evidence that Goeden made statements to the SSA that he could not perform his job even with reasonable accommodations. Thus, the

**Memorandum Decision & Order - 5**

Court will deny Darigold's motion for summary judgment based on Goeden's statements to the SSA.

Darigold argues, however, that Goeden's statements to obtain benefits under the policy issued by Standard Insurance go much further and should result in estoppel. Darigold asserts that by seeking benefits under that policy, Goeden essentially represented that he could not perform the job's "material duties," which are defined under the policy as "the essential tasks, functions, and operations . . . that cannot be reasonably modified or omitted." *See Exhibit 36 (Dkt. No. 89-4)*.

But even if Goeden's application to Standard Insurance constituted a representation that he could not perform the essential functions of the job even if those functions were reasonably modified, he also represented expressly to Standard Insurance on July 8, 2010, that "I still believe that I am able to work with reasonable accommodations and I have been seeking other jobs since my termination." *See Goeden Letter to Standard Insurance (Dkt. No. 78-6)*. Standard Insurance did not award long term disability benefits to Goeden until September of 2010, *see Hilgenfeld Declaration (Dkt. No. 46-9)*, and did so despite knowing that Goeden believed he could work with reasonable accommodations.

The doctrine that Darigold is advancing – to prevent Goeden from raising a claim here that contradicts a claim he made to a private insurance company – is equitable estoppel. *Keller*, 696 F.3d at 847. That doctrine "prevents a party from asserting a strict legal right after another party has been led to form a reasonable belief that the right would not be asserted." *Id*. In this sense, equitable estoppel functions as a "shield." *Id*. Because equitable estoppel effectively bars a party from asserting a legal right, its application is "strictly limited by equitable considerations

**Memorandum Decision & Order - 6**

and courts must apply it with caution and restraint." *Id*.

Here, the Court can find no equitable reason to apply the doctrine. Goeden did not mislead Standard Insurance – he told them he could work with reasonable accommodations. Knowing this, Standard Insurance nevertheless made the decision to award benefits. Reviewing the doctrine's applicability with "caution and restraint," the Court cannot find that it applies here.

**Medical Exam**

The parties have filed cross-motions for summary judgment to resolve the issue whether Darigold properly required Goeden to undergo the medical exams. Under 42 U.S.C. § 12112(d)(4)(A), an employer may not require a medical examination to determine whether an employee is disabled "unless such examination or inquiry is shown to be job-related and consistent with business necessity." The business necessity standard "is quite high, and is not to be confused with mere expediency." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010). Nevertheless, the business necessity standard

> may be met even before an employee's work performance declines if the employer is faced with "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job. An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can perform job-related functions."

*Id*. (quoting *Sullivan v. River Valley Sch. Dist*., 197 F.3d 804, 811 (6th Cir.1999)). As the "reasonable person" language suggests, this test is objective. *Id*. The employer bears the burden of demonstrating business necessity. *Id.*

Section 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues. *Id*. Thus, the employer must show that "the examination or inquiry genuinely serves the asserted business necessity and that

Memorandum Decision & Order - 7

the request is no broader or more intrusive than necessary." *Conroy v. New York State Dept. of Correctional Serv.*, 333 F.3d 88, 97 (2d Cir.2003) Id. at 98.

In this case, there are facts suggesting that Goeden was placed in the Preventative Maintenance position to accommodate his shoulder injury because this position was less physically demanding than his prior position as Maintenance Mechanic. A reasonable employer could have a "genuine reason to doubt" whether Goeden could return to the very position that he was unable to handle previously. Goeden submits evidence that the two jobs required the same physical exertion, but the Court cannot so find *as a matter of law* given the fact that the Preventative Maintenance position was created as an accommodation for Goeden's shoulder injury. Thus, there is an issue for the jury whether Darigold could order Goeden to undergo a medical exam to determine whether his past shoulder injury rendered him unfit for the Maintenance Mechanic job.

The harder question is whether the purpose of that same medical exam could expand to include an evaluation of Goeden's hearing impairment. The case law cited above makes clear that the exam must be no broader than necessary, and cannot be used to fish for a non-work related justification to fire an employee. Goeden worked for 27 months as a Maintenance Mechanic with no hearing-related issues, and this continued as he worked in his new position. The work of both jobs takes place largely in the same area of the plant. Darigold tested him annually for hearing loss, and those tests showed no change in his hearing over that time. This evidence demonstrates that at the time Goeden was fired, his hearing deficit had not created any safety or performance issues.

Darigold responds with evidence that three years prior, when Goeden fell and injured his

**Memorandum Decision & Order - 8**

shoulder, he had difficulty communicating his location by radio, leading to some delay in finding him.  After this incident, however, Goeden worked for three years without any hearing-related problems, and there is no evidence that Darigold ever discussed the incident with Goeden.  In this context, the slip-and-fall incident is "a mere scintilla of evidence" – or perhaps even less than a mere scintilla – that cannot defeat a summary judgment motion.  *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005).

Thus, the record shows that Goeden's hearing deficit was not causing any actual work-related problems prior to his termination.  Nevertheless, as *Brownfield* holds, the employer need not wait to order a medical exam until the employee's disability actually results in a safety or performance problem.  The employer must have a "genuine reason to doubt whether that employee can perform job-related functions." *Brownfield*, 612 F.3d at 1146.  Here, there is at least a jury issue as to whether a reasonable employer may have genuine doubts about the ability of an employee with a hearing impairment to respond to an emergency situation.  With the panic that accompanies emergencies, could this employee hear alarms, recognize dangers, communicate quickly, and understand orders?  A reasonable employer might have genuine doubts about Goeden's ability to respond in such an emergency, and is not required to wait for an actual emergency to gauge Goeden's ability to respond.  Thus, there is at least a jury question whether Darigold could order a medical exam to determine whether Goeden's hearing impairment posed a safety risk.

Given this, the Court will deny the cross-motions for summary judgment on the medical exam issue.

**Interactive Process**

**Memorandum Decision & Order - 9**

Goeden seeks a summary judgment ruling that Darigold failed to engage in the interactive process required by the ADA. When an employer is aware of a need for some accommodation for a disabled employee, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010). This interactive process "requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Id*. The employer's obligation to engage in the interactive process "continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id*. at 1111. The continuing obligation to engage in the interactive process "fosters the framework of cooperative problem-solving contemplated by the ADA" because it "encourag[es] employers to seek to find accommodations that really work," and because it "avoid[s] the creation of a perverse incentive for employees to request the most drastic and burdensome accommodation possible out of fear that a lesser accommodation might be ineffective." *Id.*

The interactive process requires that both the employer and the employee engage in good faith interaction to "clarify what the individual needs and identify the appropriate accommodation." *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1112 (9th Cir.2000), rev'd on other grounds, 535 U.S. 391 (2002). While the employer's participation is necessary because it has "superior knowledge regarding the range of possible positions and can more easily perform analyses regarding the essential functions of each," the employee's participation is equally important because he generally knows more about his or her capabilities, and "holds essential

information for the assessment of the type of reasonable accommodation which would be most effective." *Id.* at 1113.

In this case, it is undisputed that Darigold made no attempt to interact with Goeden after either Jacob's initial report or the later report of the audiologist concluding that Goeden could not perform the essential functions of his job. There is also no evidence that after these reports were issued, Goeden did anything to discourage interaction.

Darigold responds that prior to those reports, it had raised – and Goeden had rejected – all possible accommodations, so that any further interaction would have been a waste of time. But this argument ignores the fact that the reports of Jacobs and Schroeder were the first indications to Goeden and Darigold that Goeden's hearing deficit required an accommodation. Prior to those reports, Goeden (1) had worked for years without his impairment affecting his work as a mechanic, (2) was not counseled or disciplined for any hearing-related incidents, and (3) had no reason to believe any accommodation might be necessary. There is also no evidence that Darigold believed, prior to Schroeder's report, that any hearing accommodation was necessary for Goeden to continue working.

The evaluations of Jacobs and Schroeder triggered the requirement for an interactive process by revealing for the first time that Goeden's hearing impairment required an accommodation. It is undisputed that Darigold did nothing after those reports to interact with Goeden to explore reasonable accommodations. Consequently, Goeden is entitled to a partial summary judgment that Darigold violated the requirement to engage in an interactive process.[1]

---

[1] Darigold objected to a "Supplemental Memorandum" (Dkt. No. 94) filed by Goeden that Darigold claims is untimely and irrelevant. In the alternative, Darigold seeks to file a sur-reply brief to counter Goeden's claims made in that filing. The Court did not consider any of the material in the "Supplemental Memorandum" in rendering this decision and hence Darigold's objection and request for

**Memorandum Decision & Order - 11**

**Qualified Individual**

Darigold seeks a summary judgment that Goeden is not a "qualified individual" under the ADA, and cites *Kennedy v. Applause Inc.,* 90 F.3d 1477 (9th Cir. 1996) in support. To fit this case within *Kennedy*, Darigold argues that "Robert Schroeder, Goeden's own audiologist, further determined there were no accommodations that would allow plaintiff to perform the duties of the job." *See Darigold Brief (Dkt No. 42-1)* at p. 8.

Darigold supports this statement by citing to the December 22, 2009, letter written by Schroeder. That letter says nothing about accommodations, reasonable or otherwise. Darigold also cites to materials accompanying Jacob's evaluation. Again, those materials fail completely to support Darigold's statement.

Finally, Darigold cites to an exhibit 14 to the Declaration of Williamson. There is no such exhibit. There is an exhibit 14 to the Declaration of Darigold's counsel, Christopher Hilgenfeld. That exhibit consists of Schroder's analysis of Goeden's hearing impairment, completed months after the firing to assist Standard Insurance's evaluation of Goeden's disability application. If Darigold is proffering this as evidence of an expert opinion that no reasonable accommodations were possible, that opinion is countered by Goeden's expert, Mary Barros Bailey. *See Bailey Report, (Dkt. No. 53-31).*

For all of these reasons, the Court will deny Darigold's motion for summary judgment on the qualified individual issue.

**Age Discrimination**

Darigold seeks summary judgment on Goeden's age discrimination claim. Darigold

---

sur-reply brief is moot.

**Memorandum Decision & Order - 12**

argues first that there is no evidence that Goeden was replaced by someone younger. However, that is not the only way Goeden can establish his prima facie case. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). In *Coleman*, the Circuit held that even if the employee was not replaced by someone younger, an inference of discrimination can be established "by showing the employer had a continuing need for [his] skills and services in that [his] various duties were still being performed." *Id.* Here, there is evidence that Powell was at one point willing to transfer Goeden back to his Maintenance Mechanic position without a medical exam, and by evidence that the duties of the Preventative Maintenance Mechanic were transferred back to the Maintenance Mechanic position. This at least creates issues of fact over whether Darigold had a continuing need for Goeden's skills.

Darigold also argues that Goeden has failed to rebut their claim that they had a legitimate reason to fire him because of the safety and performance risks he created. There are, however, questions of fact over whether Darigold's stated reasons for the firing are pretextual. As discussed above, Goeden had worked for years in these positions without any work-related hearing concerns. His hearing was tested annually by Darigold and no deterioration was noted. Upon being advised for the first time that Goeden could not do his job because of his hearing impairment, Darigold made no efforts to follow up with the professionals who made that assessment to determine if reasonable accommodations were possible – instead, Darigold simply fired Goeden.

These facts create questions regarding pretext and preclude summary judgment on the age issue.

**Breach of Contract**

Darigold seeks summary judgment on Goeden's breach of contract claim. Goeden responded that the claim is redundant with his other claims and seeks to have it dismissed on that ground. The Court will therefore dismiss the claim on the ground that it is redundant rather than on the merits as sought by Darigold. Accordingly, the Court will not grant that part of Darigold's motion for summary judgment concerning this claim, but will separately order that the breach of contract be dismissed.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Darigold's motion for summary judgment (docket no. 42) is DENIED.

IT IS FURTHER ORDERED, that Goeden's motion for partial summary judgment (docket no. 49) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks summary judgment that Darigold failed to engage in the interactive process as required by the ADA. It is denied in all other respects.

IT IS FURTHER ORDERED, that Goeden's claim for breach of contract be DISMISSED on the ground that it is redundant with Goeden's other claims.

IT IS FURTHER ORDERED, that "Defendant's Objections to Plaintiff's Supplemental materials and alternatively Darigold's Sur-reply" (docket no. 96) is DEEMED MOOT.

DATED: **December 26, 2012**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 15**